**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | |
|---|---|
| Larry J. Rudolph,<br><br>        Plaintiff,<br><br>    v.<br><br>Northrop Grumman Ship Systems, Inc.,<br><br>        Defendant. | No. 1:06-cv-00820-LG-RHW<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**<br><br>(Civil Rights-Employment)<br><br>Jury Trial Demanded |

## PRELIMINARY STATEMENT

1.  This action seeks injunctive and declaratory relief to prevent continuing, systemic, and unjustified race discrimination by the employer, NORTHROP GRUMMAN SHIP SYSTEMS, INC. ("NGSS"), with regard to the retention, terms and conditions of employment, treatment, and promotion and transfer of Black employees at NGSS, including severe, pervasive, and ongoing harassment of Black employees through longstanding maintenance of a racially hostile work environment.  In addition to injunctive and declaratory relief, and all other available equitable relief, plaintiff seeks compensatory and punitive damages.

## JURISDICTION

2.  This suit is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"); and Civil Rights Act of 1866, 42 U.S.C. § 1981 ("1981").  Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e-5(f), 28 U.S.C. §§ l343 (3)&(4); 28 U.S.C. § 1331 and 28 U.S.C. § 1337.  Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 & 2202.

Plaintiff Larry J. Rudolph's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00820-LG-RHW

1

## PARTIES

3.   Larry J. Rudolph is a Black employee of NGSS who has been employed by NGSS for over 31 years.

4.   NORTHROP GRUMMAN SHIP SYSTEMS, INC. is a business that is engaged in the construction and refurbishing of seagoing vessels, both military and civilian.  It is located in Pascagoula, Mississippi.  It is an employer for purposes of Title VII.  On the basis of information and belief, plaintiff alleges that NORTHROP GRUMMAN SHIP SYSTEMS, INC. is a successor in interest to INGALLS SHIPBUILDING COMPANY.

5.   NGSS has received numerous contracts and substantial income from agencies and departments of the Federal Government, and because of the receipt of said contracts and income it is subject to Title VI of the Civil Rights Act of 1964, as amended.  NORTHROP GRUMMAN SHIP SYSTEMS, INC., and its predecessor, INGALLS SHIPBUILDING COMPANY, therefore are, and have been, a federal contractor at all times relevant.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.   All conditions precedent to jurisdiction pursuant to section 706 of Title VII of the Civil Rights Act of 1964, as amended, have been complied with to wit:  an appropriate charge of employment discrimination has been filed with the Equal Employment Opportunity Commission, and a notice of right to sue was issued by the Equal Employment Opportunity Commission.

7.   Plaintiff has filed a timely complaint based on the time limits contained in section 706 of Title VII of the Civil Rights Act of 1964, as amended.

8.   On or about December 20, 2000, the Equal Employment Opportunity Commission issued a determination finding reasonable cause to believe that a racially hostile work environment existed at NGSS.

9.   Attempts at conciliation regarding the finding of a racially hostile work environment, which was and is statutorily required, failed.

Plaintiff Larry J. Rudolph's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00820-LG-RHW

2

**PROCEDURAL BACKGROUND PRECEDING THIS COMPLAINT**

10. An initial complaint was filed in the United States District Court for the Southern District of Mississippi on March 21, 2001, in which eleven (11) persons, named as representative plaintiffs, and the organization, Ingalls Workers for Justice, alleged class-wide discrimination at NGSS on the basis of race.  The case was assigned a case number of 1:01-cv-111-(G)-(R).

11. A First Amended Complaint was filed on April 26, 2001 in the initial case, additionally alleging maintenance of a racially hostile work environment at NGSS.

12. A Complaint in Intervention was filed on February 13, 2003 in the initial case, necessitated by the Court's dismissal of the following causes of action and parties from the First Amended Complaint on February 28, 2002:

    a)  Dismissal of the class action allegations seeking compensatory and punitive damages;

    b)  Dismissal of the claim for relief alleged pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.*;

    c)  Dismissal of the claim for relief alleged pursuant to the Thirteenth Amendment to the U.S. Constitution;

    d)  Dismissal of organizational plaintiff INGALLS WORKERS FOR JUSTICE;

    e)  Dismissal of defendant LITTON INDUSTRIES; and

    f)  Dismissal of defendant NORTHROP GRUMMAN.

13. A Second Amended Complaint was filed on April 7, 2003 in the initial case.

14. On or about March 16, 2004, the initial case was reassigned to the Honorable Louis Guirola, Jr., District Court Judge; on December 30, 2004, the Honorable Robert H. Walker, Magistrate Judge, was assigned to be the Magistrate Judge for the initial case.

15. On August 17, 2006, Magistrate Judge Walker entered an order entitled, "Order Requiring Separate Complaints," which, *inter alia*, severed the plaintiffs' claims from one another, and required the filing of new complaints and assignment of new case numbers for each of the individual plaintiffs in Case No. 1:01-cv-111-(LG)-(RHW).

Plaintiff Larry J. Rudolph's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00820-LG-RHW

3

16. At some point during the period of time from August 17, 2006 through September 7, 2006, plaintiff Larry J. Rudolph's severed action was assigned the case number of 1:06-cv-00820-LG-RHW.

## FACTUAL STATEMENT

## RACIAL DISCRIMINATION GENERAL ALLEGATIONS

17. The defendant, NGSS, has intentionally pursued and continues to pursue employment policies and practices that constitute systemic discrimination against plaintiff and other Black employees and that deprive or tend to deprive such persons of equal employment opportunities within NGSS.  NGSS has intentionally implemented these policies and practices, among other ways, as follows:

   a)  By failing to treat Blacks on an equal basis with Whites.

   b)  By using selection devices for promotions that have an adverse impact on Blacks, are not job related and have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures, and have more adverse impact than equally valid alternatives.

   c)  By using evaluation procedures in the consideration of employees for promotions that discriminate against or illegally exclude Black employees from consideration.

   d)  By failing to provide Black employees with equal opportunities for advancement within the company because of their race.  Black employees are denied promotions despite their qualifications and years on the job.  It is not uncommon for a Black employee to be denied a promotion at NGSS in an area she or he has worked in for twenty years and then be assigned to train a White employee with less seniority.

   e)  By maintaining a double standard in the granting of promotions to White employees vis à vis Black employees.  Practices including cronyism, nepotism, word-of-mouth recruitment, failure to post or advertise employment opportunities, and/or the placement of White employees in acting positions have

Plaintiff Larry J. Rudolph's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00820-LG-RHW

4

inured to the determent of Black employees historically.

f)  By restricting access to employment opportunities for Black employees and maintaining a workforce in which its supervisory and management personnel has been and continues to be predominately White.

g)  By engaging in a policy in which positions are actually filled even before they may be posted or advertised as an available position.

h)  By demoting Black employees at a disproportionate rate as compared to White employees.

i)  By retaliating against Black employees after they have complained or challenged, in any way, the discriminatory policies, procedures, and practices that permeate the work environment at NGSS.

j)  By denying Black employees opportunities to go on trips or sea trials where they would be able to earn substantial amounts of overtime.

k)  By maintaining a practice of "job steering," resulting in Black employees being assigned to, and then denied the opportunity to move out of, dangerous, dirty, and generally less desirable work areas because of their race.

l)  By instituting and allowing the continuance of a racially hostile work environment for Black employees.

18. This pattern or practice denies the full exercise of rights secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

19. NGSS has been aware that its actions with regard to the treatment of Black employees were and are in violation of federal statutes prohibiting discrimination on the basis of race.

## SPECIFIC CLAIMS FOR RELIEF

## TITLE VII AND § 1981

20. Plaintiff incorporates paragraphs 1 through 19, as though fully set forth herein.

Plaintiff Larry J. Rudolph's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00820-LG-RHW

5

21. Plaintiff has worked for 31 years in one or more of the departments at NGSS utilizing a position entitled "leaderman" or "half-hat."  Based upon information and belief, plaintiff hereby alleges that no formal means of applying for the position of "leaderman" or "half-hat" at NGSS exist; however, plaintiff is aware that numerous White employees have been selected for the position of "leaderman" or "half-hat" without having made any such interest known. Plaintiff has made it known that he has been interested in being selected for the position of "leaderman" or "half-hat," however, plaintiff has never been selected for the position in spite of his 31 years at NGSS.  Plaintiff has not been informed in any way that he was not qualified for the position of "leaderman" or "half-hat."  Indeed, he has been "re-rated to function in the positions of work leaderman and even foreman sporadically in the late 1990s and early 2000s. Furthermore, he has been described by his supervisors as a highly qualified welder.  The means used to determine that plaintiff would not be selected for a position, for which he was and is qualified, have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures.  This includes the following instances:

    a)  Starting in 1985, plaintiff made the first of many verbal applications to be promoted to the position of work leaderman, a position for which plaintiff was qualified, but for which he has not been selected because of his race.

    b)  In 1996, plaintiff was informed by Eugene Jones that he would be selected for the position of work leaderman, a position for which plaintiff was qualified, but for which he was not selected because of his race.

    c)  In 1999, plaintiff, after being informed by Mike Cochran that there might be a work leaderman position available, plaintiff verbally applied for the position; however, plaintiff was not selected because of his race.

    d)  Similarly in 2000, after informing Mr. Cochran that plaintiff was interested in the work leaderman position, plaintiff was not selected for the position on a full time basis because of his race.  Rather, he would fill the position on a periodic basis.

    e)  Furthermore, in the late 1990s, plaintiff had been informed by a co-worker and

Plaintiff Larry J. Rudolph's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00820-LG-RHW

6

union steward, Mike Boueware, that then-Superintendent Howard Weaver had stated that no Black employee would be promoted to a supervisory position as long as he was working at the shipyard.

22. Plaintiff has received less compensation than similarly situated White co-workers for doing the same job.  He and other Black co-workers have not been selected for overtime assignments.  For example in 2000, Wayne Ellington, a White employee with less seniority than plaintiff, was called for overtime work instead of plaintiff.  Furthermore, other opportunities for welders to make extra money by special assignments have not been made available to him.  For example, plaintiff is aware that Jake Ivey has allowed his son to do "pick-up" welding for extra pay, but this means of getting extra pay has not been afforded to plaintiff and other Black workers.  Plaintiff has been made aware of these discrepancies by means of personal observation.

23. Plaintiff has made his supervisor(s) aware that he desired to receive certain training, including training for the robotic welding machine.  However, while plaintiff was selected for the requested training, he was not provided the level and length of training that was provided to his similarly situated White co-workers.  Furthermore, the selection process for obtaining training has never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures.

24. Plaintiff has been subjected to racial job tracking that assigns Black employees at NGSS at a disproportionate rate as compared to White employees to the most undesirable, dirtiest, and dangerous employment environments in the workplace.  This includes the following instances:

     a)  Plaintiff and other Black employees have been assigned to work in areas such as the "inner bottom" of ships, the "jack-up box", hulls, and on oil rigs were it is cramped, wet, hot, extremely dirty, and greasy.

25. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been exposed to offensive racially derogatory writings, depictions, and/or graffiti on

Plaintiff Larry J. Rudolph's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00820-LG-RHW

7

a constant basis in a number of places at NGSS.  NGSS knows or should have known of the presence of offensive racially derogatory writings, depiction, and/or graffiti in its workplace, but has failed to take steps to prevent or correct promptly its occurrence.  Plaintiff has complained about being subjected to the offensive racially derogatory writings, depictions, and/or graffiti, but the response has always been insufficient to remedy the situation.  Plaintiff has not complained about each and every instance of having been exposed to the offensive racially derogatory writings, depictions, or graffiti because plaintiff believed it would be useless so to do, given the historical lack of sufficient response on the part of NGSS, and plaintiff also feared retaliation for making complaints.  This includes the following instances:

    a) Plaintiff has seen offensive racially derogatory writing, depictions, and/or graffiti in various restrooms throughout his tenure at NGSS up until approximately 2005. Plaintiff has been in the restrooms at the same time as various supervisors.  The offensive material therein was apparent to anyone.  Plaintiff has observed writings that appeared to recruit persons to join the KKK and drawings that depicted lynchings.

26. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been exposed to White supervisory personnel and White non-supervisory employees using the term "nigger" or other racial epithets, including in jokes, on a constant basis in a number of places at NGSS.  NGSS knows or should have known about use of the term "nigger" and other racial epithets by White supervisory personnel and White non-supervisory employees, but has failed to take steps to prevent or correct promptly its occurrence.  Plaintiff has not complained about each and every instance of having heard this or other racial epithets because plaintiff believed it would be useless so to do given the historical lack of sufficient response on the part of NGSS. This includes the following instances:

    a) In the 1990s, plaintiff heard the word "nigger" uttered by a Supervisor named Robinson and directed the word "nigger" at a Black employee named Charlie Smith.

Plaintiff Larry J. Rudolph's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00820-LG-RHW

8

b)  In the mid-1990s, plaintiff also heard Lamar Robinson, a supervisor, refer to a Black co-worker as "little nigger."

c)  Plaintiff frequently heard White co-workers telling racist jokes.

d)  In 2005, a supervisor named Don Coulter told a Black co-worker that he complained so much that "if they put a rope around your neck, you'll complain about that."

e)  On or about June 16, 2006, a White employee, David Short, brought in a double water fountain over which he posted a sign for each of the fountain bowls, one of which read "Short and Black," Black being the last name of a White supervisor. The second sign read "others."

27.  Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been exposed to nooses in a number of places at NGSS.  NGSS knows or should have known about the presence of nooses, both actual and depicted in drawings, at its workplace, but has failed to take steps to prevent or correct promptly its occurrence.  Plaintiff has not complained about each and every instance of having seen nooses at NGSS because plaintiff believed it would be useless to do so, given the historical lack of sufficient response on the part of NGSS.  This includes the following instances:

a)  In 1975, plaintiff observed a noose on ship being built for the United States Navy. Plaintiff did not complain at that time because, based on NGSS's historical lack of response, plaintiff believed that the response would be insufficient to remedy the situation. However, NGSS was or should have been aware of the presence of the noose as it was in plain sight.

b)  On or about 1986, plaintiff observed a noose at the fabrication shop.  Plaintiff did not complain at that time because, based on NGSS's historical lack of response, plaintiff believed that the response would be insufficient to remedy the situation.

c)  Also in 1986, plaintiff saw a White co-worker tying a noose, and when plaintiff asked this employee to stop, the employee just laughed.

Plaintiff Larry J. Rudolph's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00820-LG-RHW

9

28. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. The hostile work environment comprises and/or has culminated in the adverse treatment described in paragraphs 20 through 24, incorporated as though fully set forth herein.

29. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been and is aware of the fact of presence of offensive racially derogatory writings, depictions, and/or graffiti; ubiquitous use of the word "nigger" and other racist epithets; and nooses at NGSS.

30. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been and is aware of the fact that Black employees have not been provided equal opportunity with regard to upward job mobility.

31. The hostile work environment based on race to which plaintiff has been exposed is of a continuing and ongoing nature and constitutes a continuing violation of Title VII and § 1981.

32. NGSS has failed to take steps to remedy and correct promptly the harassing behavior occurring in its workplace.  NGSS has failed to promulgate, disseminate, and enforce adequately an anti-harassment policy and failed to provide sufficient training to its employees regarding the same.  NGSS has failed to respond sufficiently to complaints regarding the harassment as set forth in paragraphs 25 through 31, incorporated as though fully set forth herein.

## APPROPRIATENESS OF EQUITABLE RELIEF

33. Plaintiff will suffer irreparable injury if the declaratory and injunctive relief requested herein is not granted, because NGSS will make employment decisions on the basis of the discriminatory procedures and practices described herein or will not remediate the racially hostile work environment that exists in its workplace. If NGSS is not enjoined from engaging in discriminatory employment practices, plaintiff will be deprived of career opportunities, which plaintiff otherwise would have been able to pursue, but for NGSS's discriminatory employment practices.

34. No plain, adequate, or complete remedy at law is available to plaintiff.  The loss of promotional opportunities, experience, and careers with NGSS cannot be adequately

Plaintiff Larry J. Rudolph's Complaint for                                                                      10
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00820-LG-RHW

compensated by monetary relief.  Similarly, the continued subjection to a racially hostile work environment cannot be adequately compensated by monetary relief.

35. Unless restrained by order of this Court, NGSS will continue to pursue policies and practices, which are the same as, or similar to those alleged above.

## FIRST CLAIM FOR RELIEF

36. Plaintiff refers to and incorporates by reference the allegations contained in paragraphs 1 through 35 and further alleges for a first claim for relief as follows:

37. Defendant has intentionally failed to provide plaintiff equal employment opportunities by discriminating against plaintiff on the basis of race with regard to treatment and promotions at NGSS.  NGSS's unequal treatment of plaintiff and other Black employees and its intentional failure to remedy such unequal treatment violates plaintiff's right to be free from such discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*

## SECOND CLAIM FOR RELIEF

38. Plaintiff refers to and incorporates by reference the allegations contained in paragraphs 1 through 37 and further alleges for a second claim for relief as follows:

39. Defendant has intentionally failed to provide plaintiff equal employment opportunities by discriminating against plaintiff on the basis of race with regard to treatment and promotions at NGSS.  NGSS's unequal treatment of plaintiff and other Black employees and its intentional failure to remedy such unequal treatment violates plaintiff's right to be free from such discrimination under the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

## THE APPROPRIATENESS OF COMPENSATORY AND PUNITIVE DAMAGES

40. Defendant NGSS has caused plaintiff emotional distress and mental anguish as a proximate result of its illegal practices, and plaintiff is entitled to compensatory damages pursuant to the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

41. Similarly, defendant NGSS was aware that its actions with regard to plaintiff were in

Plaintiff Larry J. Rudolph's Complaint for                                                                    11
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00820-LG-RHW

violation of federal statutes prohibiting discrimination on the basis of race, and therefore,
plaintiff is entitled to punitive damages.

## **PRAYER**

WHEREFORE, plaintiff prays that this Court:

a) Declare pursuant to 28 U.S.C. §§ 2201 & 2202 the employment practices set forth
in paragraphs 17 through 32 to be unlawful and in violation of Title VII of the
Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* and the Civil
Rights Acts of 1866, as amended, 42 U.S.C. § 1981;

b) Adjudge, decree, and declare that the practices of NGSS complained of herein are
violative of the rights secured to plaintiff by Title VII of the Civil Rights Act of
1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Civil Rights Act of 1866, as
amended, 42 U.S.C. § 1981;

c) Issue a preliminary and permanent injunction enjoining NGSS, its agents,
successors, employees, attorneys, and those acting in concert with it from
engaging in each of the unlawful practices set forth in paragraphs 17 through 32
and from continuing other practices found to be in violation of applicable law;

d) Direct NGSS to take such affirmative steps as are necessary to ensure that the
effects of its unlawful employment practices are eliminated;

e) Enter a permanent mandatory injunction requiring that NGSS adopt employment
practices in conformity with the requirements of Title VII of the Civil Rights Act
of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Civil Rights Act of 1866,
as amended, 42 U.S.C. § 1981;

f) Require that NGSS submit a comprehensive plan detailing how it plans to ensure
fair and equitable job advancement opportunities for Black employees.  The plan
should also outline steps to be taken to ensure that jobs available remain open
until the posting period has expired;

g) Require that NGSS institute a policy that affords equal opportunities for training

Plaintiff Larry J. Rudolph's Complaint for                                                                                                   12
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00820-LG-RHW

and development.  The policy should include the requirement that such training

opportunities must be announced to the entire workforce as well as a procedure

consisting of a rotation scheme and other procedures to ensure that training for

job advancement is afforded to all those who are interested;

h)  Grant equitable relief, including, but not limited to, back pay, sick pay, vacation

pay, disability benefits, and seniority rights to plaintiff;

i)  Grant such punitive, general, and special damages as proved at trial;

j)  Award plaintiff the costs and litigation expenses of this action and reasonable

attorneys' fees as provided for in section 706(k) of Title VII of the Civil Rights

Act of 1964, as amended, 42 U.S.C. § 2000e-5(k), and the Civil Rights Attorneys

Fees Award Act of 1976, as amended, 42 U.S.C. § 1988; and

k)  Grant such other and further relief as may be just and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff hereby demands a

trial by jury.

Dated:  September 20, 2006                SANDRA JARIBU HILL, Esq.
                                                            Mississippi Workers Center for
                                                            Human Rights

                                                     WILLIAM C. MCNEILL, III, Esq.
                                                            The Legal Aid Society-Employment
                                                            Law Center

                                                     Counsel for Plaintiffs



                                            By:     /s/ William C. McNeill, III
                                                     WILLIAM C. McNEILL, III, Esq.



William C. McNeill, III, Esq., MS Bar No. 42867, *Pro Hac Vice*
Denise M. Hulett, Esq., MS Bar No. 44672, *Pro Hac Vice*

Plaintiff Larry J. Rudolph's Complaint for                                                   13
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00820-LG-RHW

Shelley A. Gregory, Esq., MS Bar No. 43443, *Pro Hac Vice*
The Legal Aid Society – Employment Law Center
600 Harrison Street, Suite 120
San Francisco, California  94107
(415) 864-8848

Sandra Jaribu Hill, Esq., MS Bar No. 10684
Mississippi Workers Center for Human Rights
213 Main Street
P.O. Box 1223
Greenville, Mississippi  38702-1223
(662) 334-1122

Plaintiff Larry J. Rudolph's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00820-LG-RHW

14

**CERTIFICATE OF SERVICE**

I hereby certify that on September 20, 2006, I electronically filed the foregoing with the

Clerk of the Court using the ECF System which sent notification of such filing to the following:

Paul B. Eason; Maria Candace Burnette; Timothy W. Lindsay; Stephen A. Brandon.

I hereby certify that I have mailed by United States Postal Service the documents to the

following non-ECF participants:

Tammi Liddell
3836 Prentiss St.
Moss Point, MS  39563

Willie B. Richmond
1608 Timberlane Road
Gautier, MS  39553

Edna M. Tubbs
P.O. Box 501
Escatawpa, MS  39552

  /s/ Laurel Kapros
Laurel Kapros

Plaintiff Larry J. Rudolph's Complaint for                                                                15
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00820-LG-RHW