IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| LARRY RUDOLPH | § | PLAINTIFF |
| | § | |
| v. | § | Civil No. 1:06CV820-HSO-JMR |
| | § | |
| HUNTINGTON INGALLS, INC. | § | DEFENDANT |

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

THIS MATTER COMES BEFORE THE COURT on a Motion for Summary

Judgment filed by Defendant Huntington Ingalls, Inc.[1] ["Defendant"] on February

15, 2011 [408].  On April 19, 2011, Plaintiff Larry Rudolph ["Rudolph"] tendered a

Response [411], and on May 6, 2011, Defendant filed its Rebuttal [414].  After due

consideration of the record, the submissions on file, and the relevant legal

authorities, the Court finds that because Rudolph is unable to maintain his claims

as a matter of law, Defendant is entitled to summary judgment.

I. FACTS AND PROCEDURAL HISTORY

A.   Procedural History

An initial Complaint [1] was filed in this Court on March 21, 2001, and a

First Amended Complaint [2] was filed on April 26, 2001, naming eleven (11)

---

[1]Counsel for Defendant filed a Motion to Substitute Party on September 8, 2010.  The Court granted the Motion as unopposed and Defendant's name in the style of the case was changed from "Northrop Grumman Ship Systems, Inc.," to "Northrop Grumman Shipbuilding, Inc."  Counsel filed another Motion to Substitute Party on June 7, 2011, which was granted by Text Order dated July 13, 2011. Defendant's name in the style of the case was changed to "Huntington Ingalls Incorporated."

individuals and the Ingalls Workers for Justice as Plaintiffs.  Rudolph was not a named Plaintiff in the original suit.[2]  Named Defendants were Ingalls Shipbuilding Company, Litton Industries, and Northrop Grumman.  As detailed in its Memorandum Opinion [16] of February 27, 2002, and pursuant to its Judgment of February 28, 2002 [17], the Court dismissed Plaintiffs' Thirteenth Amendment and Title VI claims, dismissed Litton Industries and Northrop Grumman as Defendants, dismissed Ingalls Workers for Justice as a Plaintiff, and dismissed Plaintiffs' class action claims.

On July 16, 2002, by way of a Motion for Leave to File a Complaint in Intervention [27], putative class members requested leave to intervene as Plaintiffs in this action, pursuant to Federal Rule of Civil Procedure 24.  A Second Amended Complaint [48] was filed on April 7, 2003.  Subsequently, Defendant's Motion to Sever was granted by Order entered August 17, 2006 [360], which required Plaintiffs to file separate complaints.  Following severance of his claims, Rudolph filed his present Complaint [362] on September 20, 2006.

In 2008, the Court entered an Order administratively closing all the severed cases while the claims of all but fourteen (14) plaintiffs were heard and resolved through arbitration.  Rudolph was one (1) of the fourteen (14) who opted out of the arbitration proceedings.  Upon conclusion of the various arbitrations, on June 16, 2010, the Court reopened the above captioned cause.  Following a status conference

---

[2]Rudolph was one (1) of one hundred forty-three (143) individuals who comprised the Ingalls Workers for Justice and who filed a charge with the Equal Employment Opportunity Commission on January 28, 2000.

held on August 23, 2010, the Court reset this case for trial on the Court's August 2011 trial calendar.  Upon a Joint Ore Tenus Motion of the parties on July 5, 2011, the Court continued the trial and reset it on the Court's October 2011 trial calendar. Order [418], at p. 1.

B.     Factual Background

Larry Rudolph was first hired by Defendant in its shipyard in 1975 as a welder.  Pl.'s EEOC Questionnaire, attached as Ex. "F" to Def.'s Mot. for Summ. J. As of February 2011, Rudolph still worked at the shipyard, and he plans to stay at the shipyard until he retires.  Def.'s Mem. Br. in Supp. of Mot. for Summ. J. , at p. 1; Oct. 27, 2010, Dep. of Larry Rudolph, at p. 67, attached as Ex. "B" to Def.'s Mot. for Summ. J.

In his Complaint, Rudolph seeks injunctive and declaratory relief to prevent alleged systemic and unjustified race discrimination by Defendant with regard to the retention, terms and conditions of employment, treatment, and promotion and transfer of African-American employees.  Compl., ¶ 1.  Rudolph alleges severe, pervasive, and ongoing harassment of African-American employees through longstanding maintenance of a racially hostile work environment.  *Id.*  In addition to injunctive and declaratory relief, Rudolph seeks compensatory and punitive damages.  *Id.*  In its present Motion, Defendant moves the Court to grant summary judgment on all claims asserted in Rudolph's Complaint.  Defendant contends that many of Rudolph's discrimination claims are barred by the applicable statutes of limitations, and that it is otherwise entitled to judgment as a matter of law on

Rudolph's remaining claims.

## II. <u>DISCUSSION</u>

A.    <u>Summary Judgment Standard</u>

Rule 56(a) of the Federal Rules of Civil Procedure states that the Court shall grant summary judgment on each claim or defense on which summary judgment is sought if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a). The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Meyers v. M/V Eugenio C.*, 842 F.2d 815, 816 (5th Cir. 1988).

To rebut a properly supported motion for summary judgment, the opposing party must present significant probative evidence, since there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *Booth v. Wal-Mart Stores, Inc.*, 75 F. Supp. 2d 541, 543 (S.D. Miss. 1999).  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The nonmovant may not rely on mere denials of material facts, nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda.  *Booth,* 75 F. Supp. 2d at 543.

The mere existence of a disputed factual issue does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material.  *Id*.  With regard to "materiality," only those disputes or facts that might affect the outcome of

-4-

the lawsuit under the governing substantive law will preclude summary judgment. *Id.* (citing *Phillips Oil Company v. OKC Corp.,* 812 F.2d 265, 272 (5th Cir. 1987)). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . . all other contested issues of fact are rendered immaterial." *Id.* (quoting *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1987)).

B.      Applicable Statutes of Limitations

        Rudolph's claims are brought pursuant to 42 U.S.C. § 2000 ("Title VII") and 42 U.S.C. § 1981 ("Section 1981"), whose respective statutes of limitations are discussed below.

        1.      Title VII

        "Title VII requires persons claiming discrimination to file a charge with the EEOC within 180 days after the allegedly discriminatory practice occurs and this period begins to run from the time the complainant knows or reasonably should have known that the challenged act has occurred." *Vadie v. Miss. State University*, 218 F.3d 365, 371 (5th Cir. 2000); *see also* 42 U.S.C. § 2000e-5(e)(1).  Although the filing of a timely charge with the EEOC is not a jurisdictional prerequisite to a suit in federal court, it is a requirement that is similar to the statute of limitations, and is therefore subject to the doctrines of waiver, estoppel, and equitable tolling. *Cruce v. Brazosport Independent School Dist.*, 703 F.2d 862, 863 (5th Cir. 1983).  Thus, a plaintiff cannot sustain a claim under Title VII for events which occurred more than 180 days before the filing of the charge of discrimination, absent a showing of

waiver, estoppel, and/or equitable tolling.  *Id.*

Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easily identified.  Each incident of discrimination and each retaliatory adverse employment decision constitute a separate, actionable unlawful employment practice.  *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 114 (2002).  In *Morgan*, the United States Supreme Court explained that "[h]ostile work environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct."  *Id.* at 115; *see also Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003) ("Under the continuing violations doctrine, a plaintiff may complain of otherwise time-barred discriminatory acts if it can be shown that the discrimination manifested itself over time, rather than in a series of discrete acts."). The parties have not briefed the continuing violation theory.  However, because Rudolph has raised the continuing violation doctrine in his Complaint, Compl. ¶ 31, the Court will address it.

The Fifth Circuit has stated that the continuing violation doctrine "has been endorsed for use by [it] under limited circumstances."  *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 351 (5th Cir. 2001).  It has explained that

> [i]n order to rely on a continuing violation theory, a plaintiff must show that the harassment within the limitations period and the harassment outside the limitations period constituted "a series of related acts" and that "an organized scheme led to and included the present violation."  *See Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir.2004); *Felton v. Polles*, 315 F.3d 470, 485 (5th Cir. 2002) (citing *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 352 (5th Cir. 2001)).  This court has looked to at least three factors in determining whether acts are sufficiently related to constitute a continuing violation: (1) whether the alleged acts involve the same type of discrimination, tending to connect them in a

> continuing violation; (2) whether the acts are in the nature of recurring events, or are more in the nature of isolated events; and (3) whether the act or acts have the degree of permanence that should alert an employee to assert his rights. *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998).

*Butler v. MBNA Technology, Inc.*, 111 F. App'x 230, 232-33, 2004 WL 2244203, *2 (5th Cir. 2004).

"[T]he continuing violation doctrine does not automatically attach in hostile work environment cases, and the burden remains on the employee to demonstrate an organized scheme led to and included the present violation." *Celestine*, 266 F.3d at 352. For discrete acts of discrimination, *Morgan* held that application of the continuing violation theory to these types of claims depends on the nature of the claim asserted:

> First, discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred. The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

*Id.* at 113.

The *Morgan* Court concluded that the continuing violation theory does not apply to Title VII claims alleging discrete discriminatory acts arising outside the applicable statutory time period. Therefore, in order to timely file suit under Title VII, the charge must be filed within 180 days of the alleged discrete discriminatory act. 42 U.S.C. § 2000e-5(e)(1). The time limitations period set forth in Title VII

-7-

commences with the date of "the alleged unlawful employment practice."  42 U.S.C. § 2000e-5(e); *see also Delaware State College v. Ricks*, 449 U.S. 250, 259 (1980)(holding that the present day effects of past discrimination are not actionable under Title VII); *Huckabay v. Moore,* 142 F.3d 233, 240 (5th Cir. 1998)(one time employment event such as "demotion is the sort of discrete and salient event that should put the employee on notice that a cause of action has accrued.").

The EEOC charge that led to this litigation was signed on January 14, 2000, and received by the EEOC on January 28, 2000.  Charge of Discrimination, attached as Ex. "A" to Def.'s Mot. for Summ. J.  Defendant maintains that the date filed is January 14, 2000, and that Rudolph cannot recover under Title VII for alleged discrimination or harassment occurring before July 18, 1999.  Def.'s Mem. Br. in Support of Mot. for Summ. J. at p. 2.  However, there is Fifth Circuit precedent indicating that the filed date would be January 28, 2000, making the cutoff date August 1, 1999.  *See Taylor v. Gen. Tel. Co. of Sw.,* 759 F.2d 437, 441–42 (5th Cir. 1985) (charge is "filed" under Title VII when it is received by EEOC) (citing 29 C.F.R. § 1601.13(a)).  The Court need not resolve this issue since, regardless of which date is used, the result here would not change.  Using the earlier date urged by Defendant, which is more favorable to Rudolph, Rudolph cannot recover under Title VII for any alleged discrete discriminatory acts which occurred before July 18, 1999.  *See Cruce*, 703 F.2d at 863-64.  Rudolph further bears the burden of demonstrating that the continuing violation doctrine is applicable to any of his claims.  *Celestine*, 266 F.3d at 352.

2.    Section 1981

Claims which assert violations of 42 U.S.C. § 1981 are governed by the same standards applicable to claims raised under Title VII, with the exception that Section 1981 claims do not require exhaustion of remedies.  *Walker v. Thompson,* 214 F.3d 615, 625 (5th Cir. 2000); *Wilkes v. Fedex Ground Package Sys.,* 359 F. Supp. 2d 539, 541 (S.D. Miss. 2005); *Ellison v. Darden Restaurants, Inc.,* 52 F. Supp. 2d 747, 754  n.7 (S.D. Miss. 1999).  Because Section 1981 does not contain its own statute of limitations, the Supreme Court has determined that certain claims brought pursuant to Section 1981, namely those made possible by a post-1990 Congressional enactment, are subject to the federal four year catch-all statute of limitations set forth in 28 U.S.C. § 1658.  *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004).  Pre-existing causes of action are subject to a "borrowed" state limitations period, or the most analogous state tort statute of limitations.  *Id.*; *see also Mitchell v. Crescent River Port Pilots Ass'n*, 265 F. App'x 363, 368 (5th Cir. 2008).

Defendant argues that, under *Felton v. Polles*, 315 F.3d 470, 474 (5th Cir. 2002), the most analogous Mississippi statute of limitations would apply to Plaintiff's claims for denial of promotions, which would be three years, rather than the federal four year catch-all statute of limitations of 28 U.S.C. § 1658.  Under the pre-1991 version of Section 1981, a failure to promote claim was actionable only if the nature of the change in position involved the opportunity to enter into a new contract with the employer, such that the promotion would rise to the level of an

opportunity for a new and distinct relationship between the employee and the

employer, making it subject to the shorter Mississippi state statute of limitations.

*See Jones*, 541 U.S. at 382*; Patterson v. McLean Credit Union*, 491 U.S. 164, 186

(1989); *see also Johnson v. Crown Enterprises, Inc.*, 398 F.3d 339, 341 (5th Cir.

2005) (applying Louisiana's one-year prescriptive period for tort actions to

independent contractor's Section 1981 claim for failure to enter into a new contract

with him); *Hubert v. City of Baton Rouge/Parish of East Baton Rouge, Dept. of

Public Works*, 2009 WL 774343, *2 (M.D. La. March 20, 2009) ("Whether a one year

or four year prescriptive period applies to the plaintiff's Section 1981 claim, turns

on whether the promotion was an opportunity for a new and distinct relationship

between the plaintiff and his employer.  If the promotion would give rise to such a

new relationship, the one year period of Article 3492 is applicable.  If the

circumstances of the promotion would not result in a new and distinct relationship

between the plaintiff and the City-Parish, then the four year prescriptive period

under federal law would apply.").  It is not clear in this case whether the nature of

the changes in positions allegedly sought by Plaintiff involved the opportunity to

enter into a new contract with Defendant, in order for the Court to ascertain

whether the three year state or the four year federal limitations period should

apply.  *See Jones*, 541 U.S. at 382; *Patterson*, 491 U.S. at 186.  Out of an abundance

of caution, the Court will apply the longer four year limitations period here.[3]

---

[3]Applying either the four year federal or the three year Mississippi statute of
limitations to the facts of this case does not change the outcome.

Because the original Complaint in this action was filed on March 21, 2001, Rudolph

cannot recover under Section 1981 for any acts occurring before March 21, 1997.

C.    Appropriate Method of Proof

Rudolph attaches to his Response [411] the affidavits and depositions of

plaintiffs in other severed cases filed against Defendant, as well as other evidence

unrelated to Rudolph's individual claims asserted herein.  Rudolph contends that

his complaints against Defendant "relate to common problems, or schemes. . . ."

Pl.'s Mem. in Supp. of his Resp., at p. 2.  He argues that

> [b]y considering the complaints as 'pattern and practice,' across the board
> spectrum of a diverse work place, it becomes obvious that racial
> discrimination was pervasive; it was directed toward a particular class,
> of which all plaintiffs are members; it either had its origin at the
> management level, and/or it was implicitly tolerated, by inaction from
> defendant.

*Id.*

Defendant replies that the "pattern and practice" method of proof is not available in

individual cases such as this one.  Def.'s Rebuttal, at p. 3.

"The typical pattern or practice discrimination case is brought either by the

government or as a class action to establish 'that unlawful discrimination has been

a regular procedure or policy followed by an employer or group of employers.'"

*Celestine*, 266 F.3d at 355 (quoting *International Brotherhood of Teamsters v.

United States*, 431 U.S. 324, 358–59 (1977)), *abrogated on other grounds by Nat'l

R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).  The Fifth Circuit has

explained that "[t]he pattern and practice method of proof is almost exclusively used

in class actions, with individual racial discrimination plaintiffs confined to the

*McDonnell Douglas* framework." *Id.* (citing *Scarlett v. Seaboard Coast Line R.R. Co.*, 676 F.2d 1043, 1053 (5th Cir. 1982)).

Based on the foregoing precedent, the Court will not apply the *Teamsters* or "pattern and practice" method of proof to Rudolph's individual claims. *Id.; Scarlett*, 676 F.2d at 1053. Rudolph is before the Court in his individual capacity, and thus, the *Teamsters* method is not available to him. Because Rudolph offers no direct evidence of discriminatory intent, the Court will analyze circumstantial evidence under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Both Rudolph's Title VII and Section 1981 claims will be analyzed together under this evidentiary framework. *See Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010) (holding that "claims brought pursuant to Title VII and § 1981 are 'governed by the same evidentiary framework'" and can be analyzed together).

Under the *McDonnell Douglas* standard, Rudolph must first create a presumption of intentional discrimination by establishing a *prima facie* case. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001). If established, the burden then shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). The burden on the employer at this stage "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)). If the employer sustains its burden, the burden shifts to Rudolph to establish either: (1) that Defendant's proffered reason is

not true but is instead a pretext for discrimination; or (2) that Defendant's reason, while true, is not the only reason for its conduct, and another "motivating factor" is Rudolph's race.  *Rachid v. Jack in the Box, Inc.,* 376 F.3d 305, 312 (5th Cir. 2004).

D.    Rudolph's Individual Claims

      Rudolph's individual racial discrimination claims fall into six categories:  (1) promotion denials; (2) denial of overtime opportunities; (3) denial of training; (4) "racial job tracking"; (5) hostile work environment; and (6) retaliation.  The Court analyzes each in turn.

     1.    Denial of Promotions

      Rudolph specifically charges that he has applied for certain promotive positions, and although qualified, he was not selected due to his race.  Compl., ¶ 21. Rudolph identifies the following instances where this allegedly occurred:

> a)  Starting in 1985, plaintiff made the first of many verbal applications to be promoted to the position of work leaderman, a position for which plaintiff was qualified, but for which he has not been selected because of his race.
> b)  In 1996, plaintiff was informed by Eugene Jones that he would be selected for the position of work leaderman, a position for which plaintiff was qualified, but for which he was not selected because of his race.
> c)  In 1999, plaintiff, after being informed by Mike Cochran that there might be a work leaderman position available, plaintiff verbally applied for the position; however, plaintiff was not selected because of his race.
> d)  Similarly in 2000, after informing Mr. Cochran that plaintiff was interested in the work leaderman position, plaintiff was not selected for the position on a full time basis because of his race. Rather, he would fill the position on a periodic basis.
> e)  Furthermore, in the late 1990s, plaintiff had been informed by a co-worker and union steward, Mike Boueware, that then-Superintendent Howard Weaver had stated that no Black employee would be promoted to a supervisory position as long as he was working at the shipyard.

*Id.*

-13-

Defendant maintains that Rudolph's claims in and prior to 1996 are barred by the statute of limitations, and that his subsequent claims in 1999 and 2000 fail because the position was not filled.  Def.'s Mem. Br. in Supp. of Mot. for Summ. J. at p. 4. In order to establish a *prima facie* case of discrimination for an alleged failure to promote, Rudolph must show each of the following four elements: 1) that he is within a protected class; 2) that he was qualified for the position sought; 3) that he was not promoted; and 4) that the position was filled by someone outside the protected class. *Oden v. Oktibbeha County, Miss.*, 246 F.3d 458, 468 (5th Cir. 2001) (citing *Blow v. City of San Antonio, Texas*, 236 F.3d 293 (5th Cir. 2001)). There is no dispute in this case that Rudolph is a member of a protected class.

Rudolph's complaint about a promotion in 1996, or anytime before March 21, 1997, predates the cutoff in this case for statute of limitations purposes.  Therefore, summary judgment is appropriate as to such claims.  As for his 1999 and 2000 claims, Rudolph confirmed Defendant's position that no one was "set up" for a promotion to work leaderman at those times. Oct. 27, 2010, Dep. of Larry Rudolph, at pp. 12–13, attached as Ex. "B" to Def.'s Mot. for Summ. J.  Because the undisputed evidence demonstrates that the desired positions were not even filled, much less filled by someone outside the protected class, Rudolph is unable to establish a *prima facie* case of discrimination for the alleged failures to promote in 1999 and 2000.  *See Oden*, 246 F.3d at 468.  Summary judgment is likewise

-14-

appropriate as to those claims.[4]

Though he does not raise any demotion claim in his Complaint, during his October 27, 2010, deposition, Rudolph claimed that he was actually asked by Eugene Jones to be a work leaderman in 1996, but was purportedly demoted shortly thereafter.  Oct. 27, 2010, Dep. of Larry Rudolph, at pp. 11–13, 17, 19–21, attached as Ex. "B" to Def.'s Mot. for Summ. J.; *see* Aff. of Larry Rudolph, at p. 2, attached as Ex. "1" to Pl.'s Resp.  Rudolph testified that he worked in the position for three (3) days and then took scheduled vacation.  Oct. 27, 2010, Dep. of Larry Rudolph, at pp. 19-20, attached as Ex. "B" to Def.'s Mot. for Summ. J.  When he returned, he had allegedly been replaced by Wayne Ellington.  *Id.* at p. 20.  However, any Title VII or Section 1981 claims related to this alleged 1996 demotion are barred by the applicable statutes of limitations.  Therefore, to the extent Rudolph has made a demotion claim, summary judgment is appropriate.

2.    Denial of Overtime Opportunities

Rudolph claims that he has received less compensation than similarly

---

[4]Plaintiff alleges in his Complaint that, in the late 1990s, he was informed by a co-worker and union steward, Mike Boueware, that then-Superintendent Howard Weaver had stated that no Black employee would be promoted to a supervisory position as long as he was working at the shipyard.  Compl., ¶ 21.  This statement is hearsay, FED. R. EVID. 801, and not competent summary judgment evidence, *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 510 n.5 (5th Cir.2001) ("Because these statements are hearsay, they are not competent summary judgment evidence.").  Moreover, no evidence has been offered as to the truth of this assertion, and Plaintiff does not address this allegation in response to Defendant's present Motion.  This bare allegation and unsubstantiated assertion in the Complaint is insufficient to survive summary judgment.  *VRV Dev. L.P. v. Mid–Continent Cas. Co.*, 630 F.3d 451, 455 (5th Cir. 2011) ("[A] party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions.").

-15-

situated Caucasian employees, because he has not been selected for overtime assignments due to his race.  Pl.'s Compl., at ¶ 22.  Rudolph testified that he could only recall two occasions where he missed overtime opportunities, but that he had worked overtime at other times.  Oct. 27, 2010, Dep. of Larry Rudolph, at pp. 38–40, attached as Ex. "B" to Def.'s Mot. for Summ. J.  Even assuming that the two occasions on which Rudolph was purportedly denied overtime opportunities fell within the relevant time period, summary judgment is appropriate on this claim.

To establish a *prima facie* case of discrimination on a claim for denial of overtime, Rudolph must show (1) that he is a member of a protected class; (2) that he was qualified for his position; (3) that he suffered an adverse employment action; and (4) that other, similarly situated co-workers outside the protected class were treated differently.  *Hart v. Life Care Center of Plano*, 243 F. App'x 816, 818, 2007 WL 1855136, *1 (5th Cir. 2007) (citing *Okoye v. Univ. of Texas Houston Health Science Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001)).  "[F]or all Title VII claims, '[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating."  *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (quoting *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002)).

In *Hart,* the Fifth Circuit held that the plaintiff's allegations regarding selection for overtime assignments did not constitute an ultimate employment decision.  *Hart*, 243 F. App'x at 818; *see also Gregory v. Texas Youth Com'n*, 111 F. App'x 719, 721, 2004 WL 2244241, *1 (5th Cir. 2004) (employer making plaintiff

-16-

work more overtime than other employees was not an ultimate employment

decision); *Davila v. White,* 61 F. App'x 918, 2003 WL 1103593, *2 (5th Cir. 2003)

(holding that, in context of retaliatory hostile work environment claim, denial of

overtime opportunity was not ultimate employment decision).  The same is true

here.  Rudolph has not demonstrated that he "suffered an adverse employment

action," and thus he has failed to create a *prima facie* case of discrimination on his

overtime denial claim.  *See Hart*, 243 F. App'x at 818.  Summary Judgment on this

claim is therefore appropriate.

      3.    <u>Denial of Training</u>

      Rudolph alleges that he

> has made his supervisor(s) aware that he desired to receive certain
> training, including training for the robotic welding machine.  However,
> while plaintiff was selected for the requested training, he was not
> provided the level and length of training that was provided to his
> similarly situated White co-workers.

Compl.,¶ 23.

      Rudolph contends that Mike Cochran, a Caucasian employee, received

training for new robot welder machines before he did, which caused Rudolph to lose

his seniority.  Aff. of Larry Rudolph, at p. 3, attached as Ex. "1" to Pl.'s Resp.

Rudolph maintains that this resulted in him earning less money than he would

have earned had he received the training first.  *Id.*

      Rudolph also stated in his deposition that he had signed up for blueprint

training, but that he was not permitted to attend.  Oct. 27, 2010, Dep. of Larry

Rudolph, at pp. 44–45, attached as Ex. "B" to Def.'s Mot. for Summ. J.  However, he

acknowledged that welders were not required to be able to read blueprints, and that he did not know of any other welders who had applied for that training.  *Id.*  Fitters were the ones required to read blueprints.  *Id.*

In order to survive summary judgment on his denial of training claim, Rudolph must meet his *prima facie* case of discrimination, as delineated earlier.  Of relevance here, Rudolph must show that he suffered an adverse employment action. *Okoye*, 245 F.3d at 512–13.  Rudolph does not assert that he was denied new robot welder training, but that his training was delayed and of shorter duration than a Caucasian employee.  Aff. of Larry Rudolph, at p. 3, attached as Ex. "1" to Pl.'s Resp.  As for blueprint training, Rudolph testified that it was not necessary for his position as a welder.  Oct. 27, 2010, Dep. of Larry Rudolph, at pp. 44–45, attached as Ex. "B" to Def.'s Mot. for Summ. J.  Reviewing the record before it, considering all undisputed facts, and resolving all disputed facts in Rudolph's favor, the Court cannot conclude that Rudolph has demonstrated that he suffered an adverse employment action with respect to these denials of training.  *See Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406–07 (5th Cir. 1999) (holding that, denial of training on specialized software that plaintiff's position may have occasionally required her to use, was not an adverse employment action covered by Title VII, because there was no reasonable basis to conclude that such training would "tend to" result in a change of employment status, benefits, or responsibilities); *see also Hollimon v. Potter*, 365 F. App'x 546, 548, 2010 WL 338020, *2 (5th Cir. 2010) (holding that "a refusal to train is not an adverse employment action under Title

-18-

VII"); *Earle v. Aramark Corp.*, 247 F. App'x 519, 523, 2007 WL 2683821, *2 (5th Cir. 2007) (holding that being denied access to training and leadership courses was not considered adverse employment decisions for purposes of sex discrimination). Accordingly, Rudolph has failed to establish a *prima facie* case of discrimination as to this claim, and summary judgment is appropriate.

    4.   Racial Job Tracking

Rudolph further asserts that he was subjected to "racial job tracking" by being assigned jobs which were less desirable, dirtier, and more dangerous than those of white employees. Compl., ¶ 24; Oct. 27, 2010, Dep. of Larry Rudolph, at pp. 51–52, attached as Ex. "B" to Def.'s Mot. for Summ. J. He alleges that

> Plaintiff and other Black employees have been assigned to work in areas such as the "inner bottom" of ships, the "jack-up box", hulls, and on oil rigs were it is cramped, wet, hot, extremely dirty, and greasy.

Compl., ¶ 24.

Rudolph testified that he was assigned to these dirtier, more difficult, and more dangerous jobs from 1982 to 1984, and again in 1996. As discussed above, both Title VII's and Section 1981's statutes of limitations bar these claims. Moreover, this purported disparate treatment is not actionable, because Rudolph alleges no ultimate employment decision. *Ellis v. Principi*, 246 F. App'x 867, 870, 2007 WL 2510620, *2 (5th Cir. 2007) (holding that allegation that plaintiff was given less favorable work assignments than other employees was insufficient to sustain a disparate treatment claim because it alleges no ultimate employment decision). Defendant is entitled to summary judgment on this claim.

5.  Hostile Work Environment Claim

Rudolph contends that throughout his employment with Defendant, he was subjected to racial hostilities and intimidation.  Specifically, Rudolph alleges that he

> has been exposed to offensive racially derogatory writings, depictions, and/or graffiti on a constant basis in a number of places at [the shipyard].

Compl., ¶ 25.

Rudolph also maintains that he has been exposed to racial epithets and observed nooses in the shipyard, and that Defendant knew of these occurrences but failed to promptly prevent or correct them.  Compl., ¶¶ 25-32.  Defendant maintains that this claim is meritless.  Def.'s Mem. Br. in Support of Mot. for Summ. J. at p. 8.

a.  Applicable Statutes of Limitations

As discussed earlier herein, Rudolph cannot recover under Title VII for any alleged discrete discriminatory acts occurring before July 18, 1999, nor can he recover under Section 1981 for any acts occurring before March 21, 1997.  In its Brief, Defendant maintains that acts alleged to have created a hostile work environment which occurred before March 21, 1997, are time barred.  If Rudolph's allegations of hostile work environment were viewed as discrete acts, then Defendant would be correct in focusing its analysis only on those alleged acts which occurred after that date.  However, Rudolph has raised the continuing violation doctrine in his Complaint.  Compl., ¶ 31.

"[T]he continuing violation doctrine does not automatically attach in hostile work environment cases, and the burden remains on the employee to demonstrate

an organized scheme led to and included the present violation." *Celestine*, 266 F.3d at 352. Rudolph has not demonstrated the applicability of the continuing violation doctrine in this case, and the Court is not persuaded that it should be applied based upon the facts here. Moreover, "where a pattern of harassment spreads out over years, and it is evident long before the plaintiff sues that [he] was a victim of actionable harassment, [he] can not reach back and base [his] suit on conduct that occurred outside the statute of limitations." *Id.* (quoting *Hardin v. S.C. Johnson & Son, Inc.,* 167 F.3d 340, 344 (7th Cir. 1999)). The Court will not apply the continuing violation doctrine to Rudolph's hostile work environment claim, and instead will focus only on those alleged acts which Rudolph maintains occurred after March 21, 1997.

### b. *Prima Facie* Case

To establish a *prima facie* case of a hostile work environment claim, Rudolph must show that: (1) he belonged to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Ellis v. Principi,* 246 F. App'x 867, 2007 WL 2510620, *3 (5th Cir. 2007) (citing *Frank v. Xerox Corp.,* 347 F.3d 130, 137 (5th Cir. 2003)); *see also Long v. Eastfield College,* 88 F.3d 300, 309 (5th Cir. 1996). "For harassment on the basis of race to affect a term, condition, or privilege of employment . . . it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an

abusive working environment." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002); *see also Weller v. Citation Oil & Gas Corp.,* 84 F.3d 191, 194 (5th Cir. 1996) (Title VII's overall goal of equality is not served if a claim can be maintained solely based on conduct that wounds or offends, but does not hinder an employee's performance).

For harassment to be sufficiently severe or pervasive to alter the conditions of the victim's employment, and therefore be actionable, the conduct complained of must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21-22 (1993); *see also Shepherd v. Comptroller of Public Accounts of State of Texas,* 168 F.3d 871, 874 (5th Cir. 1999). Thus, not only must Rudolph have perceived the environment as hostile, the conduct must have been such that a reasonable person would find it hostile or abusive. *Harris,* 510 U.S. at 21-22.

To determine whether the victim's work environment was objectively offensive, courts consider the totality of the circumstances, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance. *Id.* at 23. No single factor is determinative. *Id.*

Rudolph claims that he observed the presence of hangman's nooses in the shipyard. Oct. 27, 2010, Dep. of Larry Rudolph, at p. 34, attached as Ex. "B" to

Def.'s Mot. for Summ. J.  He testified that he saw nooses three times in his tenure with Defendant, in 1975, 1985, and 1986.  *Id.*; *see* Pl.'s Supp. Resps., at p. 5, attached as Ex. "E" to Def.'s Mot. for Summ. J.  Accepting his testimony as true, based upon the record the Court finds that the statutes of limitations as applied to Rudolph's claims under both Title VII and Section 1981 preclude him from relying upon these incidents to support his hostile work environment claim.

Rudolph further contends that he was subjected to racial epithets and verbal insults.  He testified that he heard the "N word" used by a foreman named Robinson while talking to an African-American employee named Charlie Smith in the 1990s. Oct. 27, 2010, Dep. of Larry Rudolph, at pp. 30, 36, attached as Ex. "B" to Def.'s Mot. for Summ. J.  Rudolph also states that he heard a fitter named Gary Pitts "telling nigger jokes," but Rudolph could not remember whether it was before or after 1990, and he did not report the incident to management.  *Id.* at pp. 31–32. Rudolph further testified that he heard the "N word" from an hourly employee in his shop in the 2000s, after this lawsuit was filed, but again, he did not complain to anyone in management.  Oct. 27, 2010, Dep. of Larry Rudolph, at pp. 32–33, attached as Ex. "B" to Def.'s Mot. for Summ. J.  Rudolph also testified that Don Coulter, who was Rudolph's supervisor for a couple of years, made a racially offensive remark to Rudolph's coworker Wayne Burney.  Rudolph stated that he and Burney were talking, and Burney was complaining about how he was being treated.  *Id.* at p. 58.  Coulter told Burney "if I take a rope and put around your

neck, you would complain about that." *Id.*[5]

The Fifth Circuit "has found that a regular pattern of frequent verbal ridicule or insults sustained over time can constitute severe or pervasive harassment sufficient to violate Title VII." *E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, 400 (5th Cir. 2007) (citing *Walker v. Thompson,* 214 F.3d 615, 626 (5th Cir. 2000); *Farpella-Crosby v. Horizon Health Care,* 97 F.3d 803, 806 (5th Cir. 1996)). However, simple teasing, offhand comments, and isolated incidents, unless extremely serious, will not amount to discriminatory charges that can survive summary judgment. *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 347 (5th Cir. 2007) (citing *Hockman v. Westward Communications, LLC,* 407 F.3d 317, 328 (5th Cir. 2004)). Rudolph has identified three racial epithets and one racially offensive remark to a co-worker over the course of 20 or more years. When asked in his EEOC Questionnaire, which he executed in March 2000, whether he had "been subjected to any form of harassment," Rudolph responded that "[w]hen we get overtime the whites is ask [sic] first, but I have more seniority. I feel that seniority don't [sic] mean anything." Pl.'s EEOC Questionnaire, at p. 2, attached as Ex. "F" to Def.'s Mot. for Summ. J. Rudolph mentioned no racial epithets and verbal insults, or any other workplace harassment. Based on the evidence before it, even assuming all of these incidents occurred within the relevant time period, the

---

[5]It is unclear from the record when this alleged comment occurred. However, Rudolph testified that Dan Coulter was his foreman for a couple of years, around 2003 to 2004. Oct. 27, 2010, Dep. of Larry Rudolph, at p. 58, attached as Ex. "B" to Def.'s Mot. for Summ. J. The Court will therefore assume for the purposes of this Motion that this comment occurred during the relevant time period.

Court cannot say that there existed a regular pattern of frequent verbal ridicule or insults directed towards Rudolph.

Rudolph further testified that, sometime in the 2000s, another employee, machinist David Short, placed two signs on a double water fountain.  One read "Short and Black" under one foundation, and the other read "others" under the other fountain.  *Id.* at pp. 47–51.  Short and Black were both Caucasian employees, and Rudolph perceived the signs as being racist, as in "whites drink here.  Blacks drink here."  *Id.* at p. 49.  When the signs were reported to superintendent Bill Jones, Short was required to remove them.  *Id.* at p. 50.  Rudolph testified that he was satisfied at how the signs were cleaned up, and that nothing like that ever happened again.  *Id.* at pp. 50–51.  Even assuming that these signs were indicative of racial animus, Rudolph has not shown that Defendant failed to take prompt remedial action as to this act, which he must establish as part of the fifth element of his *prima facie* case.  *See Ellis,* 2007 WL 2510620, at *3.

Rudolph also testified that he saw graffiti on bathroom stalls at Defendant's shipyard, including graffiti that read, "You don't have to use a rope to kill a nigger.  There's a truck and a chain."  Oct. 27, 2010, Dep. of Larry Rudolph, at p. 62, attached as Ex. "B" to Def.'s Mot. for Summ. J.  In his supplemental discovery responses, Rudolph stated that he "has seen graffiti numerous times, including statements such as 'You don't have to have a rope in Jasper, Texas, just a truck and a chain,' 'Kill all niggers,' 'Niggers smell like dogs,' and pictures depicting lynchings."  Pl.'s Supp. Resps., at pp. 4–5, attached as Ex. "E" to Def.'s Mot. for

Summ. J.  The date or dates on which he saw this graffiti is not clear.

In 2000, Defendant posted a placard in every restroom which read as follows:

**DEFACING PROPERTY**

It is a violation of Company rules to deface any Company property, including but not limited to restrooms, lockers, walls, boxes and other property, by placing any inappropriate or offensive markings, graffiti or other writings, symbols, art or other material on any Company property. Persons found to be in violation of this rule will be disciplined, up to and including discharge.

Employees concerned about such writings, markings, symbols, graffiti, art or other material they see should call **Labor and Employee Relations** at 935-8729 to report it and its location.

Decl. of Dorothy Shaw, attached as Ex. "G" to Def.'s Mot. for Summ. J. (emphasis in original).

After the placards were installed, Rudolph saw graffiti only once in a bathroom.  Oct. 27, 2010, Dep. of Larry Rudolph, at p. 60, attached as Ex. "B" to Def.'s Mot. for Summ. J.  Rudolph did not call the number posted on the placard and never complained about the graffiti "because usually every – just about every day or every other day, they paint those bathroom walls."  *Id.* at p. 61.  Rudolph knew that it would be taken care of by Defendant.  *Id.*  Thus, as for graffiti post-2000, Rudolph has not shown that Defendant failed to take prompt remedial action, which is part of the fifth element of his *prima facie* case of discrimination.  *See Ellis,* 2007 WL 2510620, at *3.

As for graffiti between March 21, 1997, the beginning of the relevant time period, and 2000, when Defendant installed the placards, Rudolph admitted that he never complained about graffiti to anyone.  Oct. 27, 2010, Dep. of Larry Rudolph, at pp. 61–62, attached as Ex. "B" to Def.'s Mot. for Summ. J.  There is also no evidence

in the record that any racially offensive graffiti was directed at Rudolph.  Applying the *Harris* factors to this case, Rudolph has not shown the frequency or severity of any racially offensive graffiti after March 21, 1997.  While the referenced graffiti allegedly contained offensive utterances, Rudolph has not demonstrated that any of it during the relevant time period was physically threatening or humiliating.

In sum, accepting Rudolph's testimony as true, Rudolph has not shown that the totality of the properly considered alleged acts were physically threatening or humiliating, rather than merely offensive utterances.  The alleged conduct does not rise to the level of sufficiently frequent occurrences which permeated the work environment with racially discriminatory intimidation, ridicule, and insult, to support a hostile work environment claim.  *Harris*, 510 U.S. at 23.  Based on the totality of the circumstances, the evidence does not create a material fact question precluding summary judgment on Rudolph's hostile work environment claim. Moreover, Rudolph has not shown that Defendant knew or should have known of the harassment and that it failed to take prompt remedial action.  This is also fatal to his *prima facie* case.  Based upon the evidence submitted and the present record, no questions of material fact exist which preclude summary judgment on this claim.

6. <u>Retaliation</u>

Rudolph's Complaint generally alleges that Defendant has intentionally implemented policies and practices that constitute systemic discrimination against plaintiff and other Black employees "[b]y retaliating against Black employees after they have complained or challenged, in any way, the discriminatory policies,

procedures, and practices that permeate the work environment" at Defendant's shipyard.  Compl., ¶ 17.  Rudolph also alleges that he feared retaliation for raising any complaints about racially offensive writings, depictions, or graffiti.  *Id.,* ¶ 25. Rudolph does not affirmatively allege, or submit any evidence, that Defendant actually retaliated against him.  However, Rudolph's Response [412] to Defendant's Motion for Summary Judgment is replete with references to and arguments regarding retaliation.

In order to establish a *prima facie* case of retaliation, Rudolph must show:

(i) he engaged in a protected activity, (ii) an adverse employment action occurred, and (iii) there was a causal link between the protected activity and the adverse employment action.

*Hernandez v. Yellow Transp., Inc.,* 641 F.3d 118, 129 (5th Cir. 2011)(citing *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 523 (5th Cir. 2008)).

Even assuming for the sake of argument that an adverse employment action occurred, the record is devoid of evidence that Rudolph suffered an adverse employment action because he engaged in a protected activity, which is fatal to his *prima facie* case.  *See Hernandez,* 641 F.3d at 129.  Moreover, in Rudolph's supplemental discovery responses executed on April 17, 2006, he stated "Plaintiff is not presently aware of any retaliation directed at Plaintiff."  Pl.'s Supp. Resps., at p. 4, attached as Ex. "H" to Def.'s Rebuttal.  Simply put, the record does not support a retaliation claim.  Summary judgment on this claim is therefore appropriate.

## III.  <u>CONCLUSION</u>

For the foregoing reasons, Rudolph has not met his burden of demonstrating that his promotion denials, denial of overtime opportunities, denial of training,

"racial job tracking," hostile work environment, and retaliation claims can withstand summary judgment.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons more fully stated herein, Defendant's Motion for Summary Judgment [408] filed February 15, 2011, should be and hereby is **GRANTED,** and Rudolph's Complaint against Defendant should be and hereby is **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 15th day of September, 2011.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE

-29-